UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANET LYNN BARKER,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:19-cv-01385-HBK<br><br>ORDER REMANDING PLAINTIFF'S SOCIAL SECURITY APPEAL[1]<br><br>(Doc. No. 12) |

      Janet Lynn Barker seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability benefits pursuant to the Social Security Act. (Doc. No. 1). The Court has reviewed the record, memoranda, and applicable law. For the reasons stated herein, the Court orders that the Commissioner's decision be REMANDED for further administrative proceedings as set forth below.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

      On June 30, 2015, Barker protectively filed a Title II application for a period of disability and disability insurance benefits with an onset date of May 2, 2011. (AR 15).[2] Barker's application was initially denied on September 23, 2015 and denied upon reconsideration on

---

[1] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. § 636(c)(1). (Doc. No. 18).

[2] The Court cites to the page number found in the bottom right-hand corner of the Administrative Record.

February 10, 2016. (AR 130-133, 137-143). Barker requested and received a hearing before Administrative Law Judge Barbara Dunn ("the ALJ") on February 15, 2018 where Barker appeared and testified. (AR 54-114). Barker's testimony continued at a supplemental hearing on July 30, 2018. (AR 31-53). On October 2, 2018 the ALJ issued her decision finding Barker was not disabled. (AR 15-25). The Appeals Council denied Barker's request for review on August 1, 2019. (AR 1-6). Barker has thus exhausted her administrative remedies.

Barker filed the present appeal before this Court pursuant to 28 U.S.C. § 405(g) on October 2, 2019. (Doc. No. 1). Barker's opening brief was filed on June 25, 2020. (Doc. No. 12). On August 31, 2020, the Commissioner filed their opposition to Barker's opening brief. (Doc. No. 15). Barker filed a reply on September 14, 2020. (Doc. No. 16).

**A. Hearing Testimony**

Barker first testified before the ALJ on February 15, 2018. (AR 58-92). She affirmed her last job was as a driver's education instructor. (AR 59). Her position ended on April 31, 2011 when the vehicle in which she was instructing crashed. (AR 59-60, 530). Barker testified that as a result of the crash she feels pain and weakness in her left shoulder, left hand, and neck. (AR 64, 66). While her left hand is non-dominant, Barker attested she cannot type for longer periods, and when she must use her left hand, such as lifting an object, her pain greatly increases. (AR 64-66). Her condition has neither improved nor deteriorated since the accident. (AR 64).

To deal with her pain, Barker testified she began using a walker "almost right away" after the accident. (AR 68). Barker does so on the recommendation of "several doctors" because the accident left her with poor balance. (AR 68-69). Barker also sometimes uses a cane in lieu of the walker, particularly if she is alone. (AR 69-70). Barker estimates she can stand without a cane or walker's assistance for about five to six minutes. (AR 71).

In her spare time, Barker testified she visits with friends where they read, converse and occasionally watch television or surf the web (AR 73-74, 81). Simple household tasks such as cooking or washing dishes, or even getting dressed, can only be accomplished by Barker in a piecemeal fashion to avoid overexerting herself. (AR 73-75). Barker otherwise spends much of her day lying down. (AR 75-77). She does drive herself to places like the doctor's office, her

friends' homes or church, but only if her husband is unavailable to take her and she feels physically capable. (AR 76-78, 90). Barker does not grocery shop. (AR 77).

Barker stays in bed approximately eight days per month because her pain is unbearable. (AR 78-79). This level of immobility has remained steady since the 2011 accident. (AR 79). Barker estimates she can only lift up to six pounds, and that she cannot cook full meals, vacuum, or shower without help, and often experiences shortness of breath. (AR 80, 90). Occasionally she needs help dressing, too. (*Id.*). Barker can use a computer but only for a few minutes at a time before it becomes too painful. (AR 82-83).

Barker takes several medications to treat her pain and other conditions such as asthma and fibromyalgia. (AR 83-85). She also reported being a skin cancer survivor. (AR 87-88). Some of her prescribed medications' side effects were overbearing so Barker stopped taking them. (AR 89).

Barker's husband, Ralph, also testified at the February 15, 2018 hearing. (AR 93-99). He confirmed his wife had been in pain and needed considerable assistance since the 2011 accident. (AR 94, 96). Ralph recalled she sometimes fell while walking through the house. (AR 97). Because of her condition Ralph handles most household tasks. (AR 95).

The final testimony before the ALJ on February 15, 2018 was from vocational expert Nick Corso ("Corso"). (AR 99-113). Corso detailed Barker's work history as an office manager performed at the medium level and a driving instructor performed at the medium level. (AR 100). Barker could assume her previous positions as an office manager, Corso testified, but likely not her driving instructor job because she would be required to use her left hand. (AR 102-107). Corso believes Barker would remain employed despite two absences each month, but that three absences would likely jeopardize her employment. (AR 106).

Barker reappeared via telephone before the ALJ on July 30, 2018, where she affirmed her last date of work was April 30, 2011, and date last insured was December 31, 2015. (AR 33-35). The remainder of the hearing consisted of the testimony of the medical expert, Dr. Assan Francis "John" Kwock. (AR 35-49). Based on his review of Barker's medical history, Dr. Kwock testified Barker suffered from medically determinable impairments of degenerative disk and

degenerative joint disease present in the cervical spine, as well as mild early degenerative disk and degenerative joint disease in the lumbar spine. (AR 35-36). Barker's BMI also classified her as obese. (AR 37). Dr. Kwock affirmed Barker's impairments were painful and were present on the date last insured. (AR 38). However, he believed Barker could perform medium exertional work, and that her use of a walker was medically unnecessary. (AR 40-41).

**B. ALJ's Finding**

The ALJ made the following findings of fact and conclusions of law:

- Barker met the insured status requirements of the Social Security Act through December 31, 2015. (AR 17).
- Barker had not engaged in substantial gainful activity since the alleged onset date of May 2, 2011. (AR 18).
- Barker had the following severe impairments: degenerative disc disease and joint disease of the cervical spine degenerative disc disease; joint disease of the lumbar spine; history of left shoulder impingement; chronic pain syndrome; asthma; and obesity. (AR 18).
- Through the date last insured Barker did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404 Subpart P Appendix 1. (AR 18).
- Barker possessed the residual functional capacity through the date last insured to perform less than the full range of sedentary work as defined in 20 CFR 404.1567a with some exceptions: lifting, carrying, pushing or pulling 20 pounds occasionally 10 pounds frequently; standing and/or walking two hours in a day with use of a cane for over 20 minutes; occasional handling, fingering, feeling and reaching with her left hand; frequent handling, fingering and feeling with her right hand; no ladders, ropes or scaffolds, but occasional hazards such as dangerous machinery and heights, and occasional ramps and stairs; occasionally balancing, stooping, kneeling, crouching or crawling; occasionally encountering dusts, fumes, gasses and poor ventilation; and occasional temperature extremes. (AR 19-24)
- Through the date last insured, Barker could perform past relevant work as an Office

      Manager as generally performed because that work did not require the performance of work-related activities precluded by Barker's residual functional capacity.  (AR 24).

- Barker was not disabled as defined in the Social Security Act at any time from the alleged onset date of May 2, 2011 through the date last insured, December 31, 2015. (AR 24).

## II.  ISSUE PRESENTED

Barker presents one issue for review:  Whether the ALJ articulated clear and convincing reasons for rejecting Barker's testimony.  (Doc. No. 12 at 5).

## III.  APPLICABLE LAW AND ANALYSIS

A claimant may seek judicial review of any final decision of the Commissioner of Social Security following a denial of benefits.  42 U.S.C. § 405(g).  The Court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  Substantial evidence is not "a mere scintilla," but rather "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kelaita v. Director, OWCP*, 799 F.2d 1308, 1312 (9th Cir. 1986) (internal quotations omitted).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Hill*, 698 F.3d at 1159 (quoting *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's.  See *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

The ALJ concluded Plaintiff was not disabled and thus ineligible for social security benefits. (AR 15-25).  Specifically, the ALJ found that while "the claimants medically determinable impairments could reasonably be expected to cause some of the alleged symptoms … the claimants statements concerning the intensity persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 20).  Therefore, despite Plaintiff's "severe physical impairments, the record d[id] not support

5

a finding" that Plaintiff was disabled.

An ALJ must engage in the following two-step analysis to evaluate credibility of a plaintiff's testimony about subjective pain. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted). Second, if the plaintiff satisfies the first element, and there is no evidence of malingering, the ALJ can reject the testimony about severity of symptoms only by offering specific, clear, and convincing reasons for doing so. *Id.* at 1036 (internal quotation marks and citations omitted). The clear and convincing reasons standard is "the most demanding required in Social Security cases." *Moore v. Comm. of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).[3]

The ALJ's opinion does conclude that Barker suffered from "severe physical impairments" and does not suggest Barker was malingering. (AR 15-25). Thus, the ALJ found Plaintiff met the first test—namely presenting objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain alleged. The ALJ did not find malingering. Thus, the Court considers whether the ALJ made "specific findings stating clear and convincing reasons" to reject Plaintiff's complaints of pain. Remand is warranted if the ALJ failed to do so. *Morris v. Astrue*, 323 F. App'x 584, 586 (9th Cir. 2009).

### A. The ALJ Found Barker's Testimony Unsupported by the Medical Records

First, the ALJ determined Barker's testimony was unsupported by the medical records. (AR 19-23).

> After careful consideration of the evidence, the undersigned finds that the claimants medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> …

---

[3] The Court notes the Commissioner's objection to this standard for the record. Doc. No. 15 at 9, fn. 6.

> Overall, the medical evidence does not support the level of symptoms and limitations that the claimant alleges due to neck and back pain such as needing a walker for long distances or the inability to lift a gallon a milk. The claimant testified that she drives and visits with friends. Imaging results show mild findings, and there are no recent imaging results to reflect any worsening of her conditions. As well, long-term treatment records with Dr. Krishna show normal examination findings. Based on the record, the undersigned finds the above sedentary residual functional capacity with certain limitations regarding use of a requirements for a cane, as well as upper extremity and postural limitations, would adequately address the claimant's chronic back and neck pain, and the symptoms and limitations supported by the objective findings in the record.
>
> …
>
> In sum, the above residual functional capacity assessment is supported by the record as a whole. Although the evidence supports a finding that the claimant has severe physical impairments, the record does not support a finding that these impairments require any greater restrictions than those reflected in the above sedentary residual functional capacity which include exertional, postural, environmental limitations.

(AR 19-23).

The ALJ concluded Barker suffered from "degenerative disc disease and joint disease of the cervical spine degenerative disc disease, joint disease of the lumbar spine, history of left shoulder impingement, chronic pain syndrome, asthma, and obesity." (AR 18). Those impairments "could reasonably be expected to cause some of the alleged symptoms" but Barker's "statements concerning the intensity persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*). The ALJ proceeded to highlight medical reports and records portraying Barker's condition as unremarkable and mild. (AR 18-21). Based on those records, the ALJ concluded "the medical evidence does not support the level of symptoms and limitations that the claimant alleges." (AR 21).

The Court finds the medical lack of medical evidence is inconsistent with Barker's symptom testimony. And Barker does not expressly dispute that the medical records are inconsistent with her purported limitations. (Doc. No. 12 at 9-10). Instead, she argues "[i]t is error as a matter of law to reject a claimant's testimony solely on a lack of support from the medical evidence." (*Id.* at 9, emphasis added). As noted *supra*, it is a factor the Court can consider but is cannot be the sole factor.

**B. The ALJ Found Barker's Testimony Unsupported by Her Treatment Regimen**

In addition to the medical evidence, the second reason the ALJ discredited Barker's testimony was because her treatment regimen suggested her symptoms were under control. (AR 22). The ALJ cites to Barker's September 10, 2014 attestation that the medication and nebulizer she was prescribed mitigated her respiratory issues. (AR 22, 568).

> As well, records reflect that treatment with medication and a nebulizer address these [asthma] symptoms, as the claimant reported that medication was helpful ([Exhibit 9F] at 25). Although the claimant reports ongoing symptoms of shortness of breath during monthly visits with Dr. Krishna (Exhibits 1 6F; 1 7F), examination findings in Dr. Krishna's records reflect consistently normal results such as clear lungs, no rales, no rhonchi and no wheezes (see for example, Exhibit 1 7F/28) despite an ongoing diagnosis. As well, the consultative internal medicine examiner noted a normal lung examination in October 2012 (Exhibit 6F/4). The medical evidence does not support the level of symptoms and limitations that the claimant alleges. The undersigned finds that the above sedentary residual functional capacity with environmental limitations would adequately address the claimant's ongoing asthma issues.

(AR 22).

The ALJ may consider whether the "type, dosage, effectiveness, and side effects of any medication" taken by the claimant is consistent with and/or helps alleviate a claimant's claimed limitations. 20 C.F.R. § 404.1529(c)(3)(iv)-(vi). Notes from Barker's September 10, 2014 medical appointment, which was cited to by the ALJ, state that Barker "feels like advair and prednisone have helped[,] not as short of breath[,] no fever no chills[,] is using inhaler app q hours with relief[,] no longer with pain with breathing." [sic] (AR 568). However, at that appointment and in the months that followed, Barker was prescribed a litany of medications and received Kenalog injections to address her other health issues, such as chronic pain syndrome and neuropathy, that were distinct from her respiratory problems. (AR 764 - 773). And, as the ALJ's opinion acknowledged, Barker continued to present with shortness of breath to Dr. Krishna despite using the inhaler and using the prescribed medication. (AR 22).

"[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). But asthma was only one of the seven severe impairments the ALJ found which Barker suffered. (AR

18). The ALJ does not suggest that the treatment regimen for Plaintiff's other ailments indicated they were less severe than Barker claimed. Thus, the ALJ pointing to one medical record where Barker "feels" as if the prescribed medications "have helped" her asthma is insufficient to establish clear and convincing evidence that Barker's treatment *for her other six severe impairments* was so conservative to undermine her claimed limitations. (AR 22, 568).

The Commissioner argues in his response brief that "nowhere is there any indication that Plaintiff underwent surgery or anything more aggressive than conservative treatment measures for her allegedly disabling neck, back, and musculoskeletal problems." (Doc. No. 15 at 11). This argument, however, is not cited in the ALJ's opinion (AR 15-25), and the Court cannot affirm the ALJ's denial of benefits "on a ground not invoked by the Commissioner in denying the benefits originally." *Pinto v. Massanari*, 249 F.3d 840, 847–48 (9th Cir. 2001). The Court accordingly cannot consider Barker's apparent lack of surgery at this stage of the proceedings. Overall, Plaintiff's treatment regimen concerning her asthma does not amount to an independent basis to reject Plaintiff's testimony.

### C. The ALJ's Found Barker's Testimony Unsupported by Opinion Evidence

The third reason the ALJ discredited Barker's testimony is that the opinion evidence by reviewing and treating experts and physicians indicated Barker could perform sedentary work. (AR 22-23). The ALJ credited "some weight" to the opinions of "the consultative internal medicine examiner Dr. [Jay] Dhiman and the impartial medical expert Dr. [John] Kwock, both of whom opined the claimant "had the exertional capacity for limited medium work with certain postural limitations and Dr. Dhiman finding additional upper extremity limitations." (AR 23).

> The undersigned gives some weight to the opinions of the consultative internal medicine examiner, Dr. Dhiman (Exhibit 6F) and the impartial medical expert, Dr. Kwock, who both opined that the claimant had the exertional capacity for limited medium work with certain postural limitations, with Dr. Dhiman finding additional upper extremity limitations *(Id.* at 6). The undersigned gives some weight to the postural and upper extremity limitations, however, the undersigned finds that the overall evidence supports a finding for greater restrictions. The undersigned notes that the consultative examiner did not have the opportunity to review the entire record, as their opinion was rendered in 2012, and did not have the opportunity to take into consideration the hearing testimony. Although Dr. Kwock had

> the opportunity to review the entire record, the expert also noted that they could only opine as to the claimant's musculoskeletal system and could not comment on the claimant's breathing issues and pain syndrome, other than that pain is also involved in the claimant's lumbar and cervical spine degenerative disease. The undersigned notes that due to the combination of the claimant's severe impairments, which include those beyond the lumbar and cervical spine, the record supports a finding for greater restrictions than those opined by the impartial medical expert.

(AR 23). Thus, the ALJ made clear that Dr. Dhiman's and Dr. Kwock's opinions were premised on their review of the medical records. (*Id.*)

Barker's treating physician, Dr. Doddanna Krishna, wrote that Barker was "permanently disabled," but the ALJ gave her opinion little weight because the limitations she described were "unsupported by the medical evidence." (*Id.*)

> The undersigned gives little weight to the opinion of the claimant's treating physician Dr. Krishna, who opined in January 2018 that the claimant has the capacity for less than sedentary exertion and notes that the claimant cannot lift or carry more than 5 pounds, that the claimant is "permanently disabled", noted no overhead reaching, pushing or pulling in the bilateral hands and that the claimant is unable to perform most activities such as shopping or caring for personal hygiene (Exhibit 19F/2-3, 7). The undersigned finds these limitations to be unsupported by the medical evidence, and to be inconsistent with the physician's own examination findings. As described in detail above, imaging results of the cervical and lumbar spine and left shoulder show only mild findings, an EMG/NCS also showed generally normal results, and ongoing treatment records with Dr. Krishna, as well as treatment notes with Dr. Wildenberg, reflect overall normal examination findings. As well, the undersigned notes that statements regarding disability or ability to work are not medical opinions, but rather an administrative finding dispositive of a case. These issues are reserved to the Commissioner, and as such are not entitled to any special significant weight (20 CFR 404.1527). As a result, the undersigned gives little weight to these such statements by Dr. Krishna, or by other medical providers in the record in relation to the claimant's Worker's Compensation case.

(AR 23). The ALJ did not credit weight to any other medical opinion evidence.[4] (*Id.*)

The Court construes "medical opinion evidence" as standard medical evidence, and not as an independent basis for rejecting a claimant's credibility. *Block v. Berryhill*, No. 2:16-CV-2230-

---

[4] The ALJ gave Ralph Barker's testimony little weight because he is "not an acceptable medical source" and because the ALJ found Barker's testimony to be inconsistent with the medical record. (AR 23-24). The ALJ did not discuss the testimony of the vocational expert Nick Corso.

EFB, 2018 WL 1567814, at *6 (E.D. Cal. Mar. 31, 2018).  Medical opinion evidence is "not a separate and distinct reason" for discrediting a claimant's testimony when the opinion evidence "relies on the underlying medical evidence." *Vigil v. Comm'r of Soc. Sec.*, No. 1:16-CV-01677-SAB, 2017 WL 4075581, at *8 (E.D. Cal. Sept. 14, 2017).  Here, the medical opinion evidence the ALJ credited (Dr. Dhiman and Dr. Kwock) was based on the experts' review of the underlying medical records.  Therefore, it does not support an independent basis for rejecting Barker's testimony.

### D. The ALJ's Found Barker's Testimony was Contradicted by Her Activities

The fourth and final primary reason the ALJ discredited Barker's testimony was that her behavior was inconsistent with her limitations because she "drives and visits with friends." (AR 21).

> Overall, the medical evidence does not support the level of symptoms and limitations that the claimant alleges due to neck and back pain such as needing a walker for long distances or the inability to lift a gallon a milk. The claimant testified that she drives and visits with friends.

(AR 21).  Barker testified she often drives to the doctor's office, her friend's homes or church, but only when her husband is unavailable to take her and she feels physically capable.  (AR 76-78, 90). Activities such as "driving a car … [do] not in any way detract from [one's] credibility as to [one's] overall disability.  One does not need to be utterly incapacitated in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (internal quotations omitted.).  Likewise, "visit[ing] friends and attend[ing] church" does not impugn the credibility of one's disability. *Jajo v. Astrue*, 273 F. App'x 658, 661 (9th Cir. 2008).

The Ninth Circuit has affirmed an ALJ's finding that a claimant is not disabled because the claimant engaged in activities similar to Barker's. *See, e.g., Hernandez v. Chater*, 87 F.3d 1319 (9th Cir. 1996) (citing the ALJ's determination that the claimant could "conform to a schedule, attend church services on a semi-regular basis, socialize with friends and family on occasion, and care for herself and her household on a regular basis" as adequate to support a denial of benefits).  But it has also held claimants "should not be penalized for attempting to lead normal lives in the face of their limitations," and "[o]nly if the level of activity were inconsistent

with [the claimant's] claimed limitations would these activities have any bearing on [the claimant's] credibility." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The burden is therefore on the ALJ to show Barker's activities were inherently inconsistent with her claimed limitations.

The ALJ has not met that burden. The ALJ only discussed Barker's behavior in a single sentence and cites certain activities the Ninth Circuit has also previously upheld as compatible with a disability finding. No explanation is provided by the ALJ to explain why occasional driving and socializing discredits Barker's testimony. Without that elaboration, the ALJ has failed to provide clear and convincing reasons to discredit Barker's testimony. Thus, this finding cannot form a basis independent of the medical record to discredit Plaintiff's testimony.

## IV. CONCLUSION

Each of the reasons cited by the ALJ for discrediting Barker's testimony were based on the medical evidence or were not based on clear and convincing reasons. The rejection of Barker's testimony was the primary reason the ALJ found Baker was not disabled. Had Baker's testimony been credited, the ALJ may have concluded that Barker was indeed disabled and eligible for benefits. The Court therefore remands this matter to the ALJ to either credit Barker's testimony as true or to provide clear and convincing reasons that it should be discredited.

Accordingly, it is hereby **ORDERED**:

The Clerk of Court to enter judgment, pursuant to sentence four of 42 U.S.C.§ 405(g), REVERSING the Commissioner's decision and REMANDING this case back to the Commissioner of Social Security for further proceedings consistent with this Order, and terminate any motions and deadlines and close this case.

DATED: September 29, 2021

UNITED STATES MAGISTRATE JUDGE